MR. JUSTICE SHEA
delivered the opinion of the Court.
Bruce P. Oberg, a Billings police officer appears from a summary judgment of the Yellowstone County District Court upholding a determination of the Billings Police Commission that Officer Oberg was guilty of insubordination for refusing a direct order to take a polygraph examination. The trial court enforced the Police Commission’s recommendation that Officer Oberg be suspended without pay for 15 days, followed by a six-month probationary period. Officer Oberg challenges the constitutionality of that part of a statute which provides that only employees of public law enforcement agencies can be compelled to take polygraph examinations.
Officer Oberg has challenged the statute on five constitutional grounds. He claims that the exception for public law enforcement agencies violates his constitutionally guaranteed right to equal protection of the laws, right to privacy, freedom from unlawful search and seizure, freedom from compelled self-incrimination and due process.
We reverse the trial court’s summary judgment and declare that Section 39-2-304(2), MCA, is an unconstitutional violation of public law enforcement agency employees’ right to equal protection of the laws. Although we believe the statute also offends the equal protection clause under the Fourteenth Amendment to the United States Constitution, we limit our holding to the conclusion that the statute offends the equal protection clause under Art. II, Section 4, of our own constitution. We therefore limit our discussion to the equal protection issue and do not reach the remaining *279 issues.
We summarize the agreed statement of facts submitted to the trial court. Bruce P. Oberg, a Billings police officer arrested a citizen who later filed a complaint with the police department claiming that Officer Oberg struck him after he was arrested and handcuffed. As a part of the police department’s internal investigation of the citizen’s complaint, the police chief wrote to Oberg on July 24, 1979, and formally ordered Oberg to submit to a polygraph examination. On July 27, 1979, Oberg responded by letter informing the police chief that he refused to submit to the polygraph examination. Officer Oberg asserted that mandatory compliance with the police chiefs order violated various constitutional rights guaranteed by both the United States and Montana Constitutions.
The Chief of Police then filed charges against Officer Oberg and brought the matter before the Billings Police Commission. The Chief of Police charged among other things that Officer Oberg’s failure to comply with the order to submit to a polygraph examination constituted insubordination.
The Billings Police Commission held a hearing and later on October 15, 1979, found Officer Oberg guilty of insubordination and ordered Officer Oberg be disciplined by removal from duty for fifteen days with forfeiture of all wages for that period of time together with the imposition of a six month probationary period.
On October 19, 1979, the acting city administrator issued an order enforcing the decision of the police commission. On December 11, 1979, Oberg filed a petition in Yellowstone County District Court for judicial review. After the pleadings were filed both Oberg and the City moved for summary judgment on the ground that no issues of material fact were presented to the trial court for resolution. The trial court granted the City’s motion for summary judgment and held that the polygraph provision as applied to police officers was constitutional.
*280 The statute involved, Section 39-2-304(1), MCA, provides:
“Lie detector tests prohibited — exception.
“(1) No person, firm, corporation, or other business entity or representative thereof shall require as a condition for employment or continuation of employment any person to take a polygraph test or any form of a mechanical lie detector test. A person who violates this section is guilty of a misdemeanor.
“(2) This section shall not apply to public law enforcement agencies.”
We hold that Subsection (2) denies employees of public law enforcement agencies equal protection of the law in violation of state constitutional provisions. The Montana Constitution, Art. II, Section 4, states:
“Individual dignity. The dignity of the human being is inviolable. No person shall be denied the equal protection of the laws. Neither the state nor any person, firm, corporation, or institution shall discriminate against any person in the exercise of his civil or political rights on account of race, color, sex, culture, social origin or condition, or political or religious ideas.”
In upholding the exception that permits employers to give polygraph tests to public law enforcement agencies, the trial court applied a strict scrutiny analysis. The trial court assumed that because a right of privacy violation was alleged, a strict scrutiny analysis was required. However, we have held that a mere allegation that a fundamental right is burdened is insufficient to trigger a strict scrutiny analysis. Godfrey v. Mont. State Fish & Game Com’n. (Mont. 1981), 631 P.2d 1265, 38 St.Rep. 661. Here, the plaintiff has challenged a general legislative classification but has failed to lay the groundwork for a claim that the classification either burdened a fundamental right or involved a suspect criteria. Examples of fundamental rights include privacy, freedom of speech, freedom of religion, right to vote and right to interstate travel. Examples of suspect criteria are wealth, race, nationality and alienage.
*281 Plaintiff has not gone beyond the mere allegation that the required polygraph test violated his right to privacy. The accusations against plaintiff unquestionably involved his work as a police officer, and as such he could not reasonably claim that the police department could not investigate his actions based upon a citizen’s complaint. He could be questioned and otherwise required to cooperate with an interdepartmental investigation based on the citizen’s complaint. Because we feel plaintiff has failed to show that any fundamental right was substantially abridged by the statute, we determine that it was unnecessary to apply the strict scrutiny analysis to the challenged part of the statute. However, even under the less vigorous test requiring that a classification must bear a rational relationship to a legitimate governmental purpose, Section 39-2-304(2), MCA, still must fail a challenge under the equal protection clause of our state constitution.
This Court cannot determine whether this classification bears a rational relationship to a legitimate governmental purpose because there is no expressed purpose for the classification on the face of the statute or in the statute’s legislative history. For that reason, the challenged part of the statute is overbroad and vague on its face, and an unconstitutional violation of the plaintiff’s right to equal protection of the law.
Subsection (1) of the statute is a directive to all employers in this state — private and public — telling them that they cannot subject a prospective employee or an employee to polygraph examination, either as a condition of gaining employment or as a condition of retaining employment. The intent is crystal clear. Subsection (2), however, is different. That subsection creates a class of people who for some undeclared reason are not to receive the protection against compelled polygraphs provided in Subsection (1). While the courts are seldom concerned with the wisdom of legislation, the purpose of the legislation is of vital concern where the constitutionality of a statute is challenged as a denial of *282 equal protection. Did the legislature intend, for example, that not only police officers, but other law enforcement employees such as secretaries, clerks, dispatchers, meter maids and dogcatchers be subject to the requirements of a polygraph examination? All these people are as much employees of law enforcement agencies as are police officers.
No rational basis is discernible from the statute that would justify excluding employees of “public law enforcement agencies” from the protection given to all other private and public employees in this state. The exclusion gives no limit of the classification’s scope, and the legislative history is so scant that it provides no substantive background regarding the purpose or scope of the classification.
The City would have us read the exclusion as applying only to police officers, but we cannot read the exclusion so narrowly. Rather, it must be read to include all employees of public law enforcement agencies. To hold that all these employees were not entitled to the benefit of the statute would make them second class citizens. The loose wording and absence of enforcement guidelines from which a purpose for the classification might be discerned, make his statute unconstitutional on its face.
The City argues that the statute must at least permit the administering of polygraph examination to police officers. Police officers may be placed in a special class for purposes of administering polygraph examinations, the City argues, because they occupy a particularly high position of public trust, and it is the goal of the City to maintain law enforcement agencies of the highest integrity. But this argument is no less true for all governmental departments and agencies. Still, under the statute, no government employee or prospective government employee can be compelled to take a polygraph examination unless he was applying for a job with or had a job with a “public law enforcement agency.”
We are not tempted to create second class citizenship for police officers by redefining and tailoring the term “public law enforcement agencies” to apply only to police officers. *283 It would not be fair for this Court to save the statutory exception by dreaming up a rational relationship to some governmental purpose by filling the void left by the legislature and declaring that the necessity of maintaining high standards in our police officers is justification for the statutory exception. The first part of the statute is a clear declaration of public policy that forbids employer use of polygraph examinations as a tool for conditioning employment or continued employment. If this blanket statutory protection to all employees is to be withdrawn from a class of employees, it is the legislature, not this Court, that must define that class and set forth the policy behind denying the protection expressly granted to all other employees in this state.
In arguing the maintenance of public trust in police officers as a justification for giving them polygraph examinations, the City has had to speculate that this was the purpose behind the amendment to the statute. We also would be required to speculate on the purpose behind the amendment. The statute, before it was amended to include Subsection (2), was clearly intended to benefit all private and public employees and to act as a bar to employer use of polygraph for employees or. prospective employees. Under these circumstances we are neither equipped nor inclined to define the purpose behind the “public law enforcement agencies” exception. In a dissent to Schulte Co. v. Gangi (1946), 328 U.S. 108, 121-122, 66 S.Ct. 925, 90 L.Ed. 1045, Justice Frankfurter wrote that “the ‘policy’ of a statute should be drawn out of its terms as nourished by their proper environment, and not, like nitrogen, out of the air.” We believe this to be especially so where the legislature has enacted legislation for the benefit of all private and public employees of this state, but then creates a special class that is not entitled to the protection of the statute. It is not our role to breathe life into a statute that is unconstitutional on its face. We will not grab out of the air what we consider to be an acceptable judicial rationalization of legislative action. The legislation must declare the policy and purpose *284 behind its laws. Here, it has failed to do so.
We cannot doubt that police officers occupy a position of public trust in our society, but this fact does not breathe life into an ambiguous statute whose enforcement is sought exclusively against police officers. By the clear wording of the statute, secretaries, dispatchers, meter maids and dogcatchers are as much employees of public law enforcement agencies as are police officers, but they do not occupy the same position of power and concomitant trust that must reside in our police forces. To hold that all “public law enforcement agencies” can be compelled, under the statute, to take a polygraph examination, would be to stamp them all as second class citizens. And an interpretation restricting the classification to police officers would stamp an even smaller class as second class citizens.
Other states have adopted similar legislation regulating the use of lie detectors in the employment context. Some of these states have also provided exceptions to the ban on the use of lie detectors and some have even singled out law enforcement agencies. Regardless of the purpose behind such a classification by other states, when our legislature has failed to declare its purpose for a statutorily created classification, we will not look to other jurisdictions. We cannot rely on the purpose behind similar legislation in other states to save an ambiguous statute in our own state when our legislature has failed to declare its purpose behind the statute. Interestingly, California has specifically provided that no “public safety officer” can be compelled to take a polygraph test and the officer’s refusal cannot in any way affect his employment status. See, Cal. Gov’t. Code Section 3307 (West 1971).
Had the legislature provided any evidence that the statute was only to apply to police officers because of their positions of high public integrity, we would have no trouble upholding the statute under the rational relationship test. However, such a statute could still be attacked under the strict scrutiny test. It would be up to the challenging officer *285 to provide evidence that a fundamental right, such as invasion of privacy, would be violated. It would then be up to the state or local government to show a compelling public interest to justify the invasion. Art. II, Section 4 of our state constitution provides for the protection of every citizen’s “individual dignity.” It cannot be doubted that subjecting one to a lie detector test is an affront to one’s dignity and unless strictly structured can be an invasion of privacy. The legislators were concerned with the types of questions that can be used by polygraph examiners to establish a response pattern and this concern was expressed in committee hearings preceding the passage of this statute. (See House Committee on Labor and Employment Committee Minutes, January 25, 1974.) We cannot assume that in administering a polygraph examination all questions would be confined to employment-related matters. Assuming furthermore, that a statutory exception were enacted to specifically exclude police officers from the general statutory protection granted all other employees in this state, we doubt that such an exception would survive a sustained attack under the strict scrutiny test.
Although we declare 39-2-304(1,2), MCA, to be unconstitutional because it denies to plaintiff equal protection of the law, we emphasize nonetheless that employees of law enforcement agencies can be questioned or otherwise required to cooperate ininterdepartmental investigations. The accusations against plaintiff involved his work as a police officer, and as such he could not reasonably claim that the police department could not investigate his actions based on a citizen’s complaint. However, the police department’s order that plaintiff take a polygraph examination violated plaintiff’s right to equal protection of the law.
The order of the District Court is reversed.
MR. JUSTICE SHEEHY concurs.