No. 84-245

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

RODNEY NICK,

     Plaintiff and Appellant,

  -vs-

MONTANA DEPARTMENT OF HIGHWAYS,
GARY WICKS as Director, RUSSELL
WRIGG, as Administrator of Divi-
sion of Motor Pool Equipment,

     Defendants and Respondents.

APPEAL FROM:  District Court of the First Judicial District,
             In and for the County of Lewis & Clark,
             The Honorable Henry Loble, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          John L. Hollow argued, Helena, Montana

     For Respondents:

          Roy Andes argued, Agency Legal Services, Helena,
          Montana
          Jack Holstrom argued, Dept. of Highways, Helena,
          Montana

Submitted:  May 15, 1985

Decided:  December 27, 1985

Filed: DEC 27 1985

_Ethel M. Harrison_
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Rodney Nick, a disabled veteran, appeals an order of the District Court, of the First Judicial District, Lewis and Clark County, granting the State's motion for judgment on the pleadings. The District Court found that the veterans' preference was a gratuity, repealable or amendable at any time, rather than a constitutionally protected property right; that the retroactive repealer in the newer statute did not deny him equal protection; and that the newer statute did not require a two-thirds vote by the Legislature to repeal the old law and bar claims under it. We affirm.

Nick is a veteran of both World War II and the Korean conflict. He was employed as a Bureau Chief with the Montana Department of Highways from 1978 to 1981. In 1981, Nick was laid-off as part of the Department's "reduction in force." He then applied for two other similar jobs available in that Department but did not receive either.

Nick filed a petition for damages and requested the court issue an order that defendant show cause why plaintiff should not be employed by the Department of Highways, on the grounds that his veterans' preference right was not considered in his dismissal or in his two subsequent applications for employment. The court granted the Department of Highways' motion for judgment on the pleadings on April 17, 1984. The District Court determined that the Montana Legislature, in Chapter 1, Section 14, Laws of 1983, passed in the 1983 Special Session (hereinafter Section 14) effectively repealed the veterans' preference statute and that this repeal applied retroactively to bar Nick's claim because it had not been reduced to judgment.

After Nick appealed, the State requested an extension of time because the issues raised by Nick's appeal were

2

pending before this Court in Conboy v. State of Montana (Mont. 1985), 693 P.2d 547, 42 St.Rep. 120. Both Nick and the Department of Highways filed amicus briefs in Conboy . After this Court affirmed the constitutionality of Section 14, Nick continued to press his appeal.

The issues Nick presents are:

(1) That Section 14 deprives Nick of property without due process of law in violation of Article 2, Section 17 of the Montana Constitution and the Fourteenth Amendment of the United States Constitution.

(2) That Section 14, by treating Nick differently than other veterans and handicapped persons, denies him equal protection of the laws guaranteed by Article 2, Section 4 of the Montana Constitution and the Fourteenth Amendment of the United States Constitution.

(3) That Section 14 is invalid under Article 2, Section 14 of the Montana Constitution because it bars Nick's suit for injury to property and it failed to receive the necessary two-thirds vote of all of the members of the House of Representatives.

This is another case following the wake of our decision in Crabtree v. Montana State Library (Mont. 1983), 665 P.2d 231, 40 St.Rep. 963. In Crabtree, we determined that the preference in hiring and firing accorded to qualified veterans and disabled persons by § 10-2-203, MCA was absolute. Subsequently, Governor Schwinden called a Special Session of the 1983 Montana Legislature to address the situation created by Crabtree. The Legislature passed a bill retroactively repealing the statutes interpreted in Crabtree and prospectively making the preference accorded veterans and disabled persons a tie-breaking device. See Ch. 1, 48th Sp. Session, Laws of Montana, Dec. 1983. The portion of the

3

Veterans' Preference Act that is directly addressed in this case is Section 14, which states:

> Sections 10-2-201 through 10-2-206, MCA, are repealed. This repeal applies retroactively to bar any claim of violation or application of 10-2-201 through 10-2-206 that has not been reduced to judgment, whether or not the judgment is final, on [the effective date of this act]. Claims under 10-2-201 through 10-2-206 that have been reduced to judgment, whether or not the judgment is final, on [the effective date of this act] are enforceable. No claim for a violation of 10-2-201 through 10-2-206 may be made under [section 8] of this act. (Effective date December 20, 1983.)

The Act passed the House of Representatives by a vote of 66-33, with one member absent and not voting. Legislative records disclose that, at the time of the Special Session, approximately fourteen lawsuits were pending against the State based on this Court's interpretation of § 10-2-203, MCA in Crabtree. The legislative history of Section 14 shows that the Legislature was unequivocal in its aim to bar those pending claims. Minutes of the meeting of the House Judiciary Committee on December 13, 1983, p. 15, point out the Legislature's intent:

> CHAIRMAN BROWN introduced a second amendment to bar any claims pending under the preference rule:
>
> . . .
>
> He said his concern arose yesterday when Superintendent Koke, from the East Helena Schools, described the situation they were in concerning the decisions they made after the Crabtree case to hire all veterans because five of seven people who had applied for employment were veterans and there were only five positions available. Essentially, what this amendment does is bar any claims pending except those that are pending final judgement [sic]. Senator Mazurek indicated in testimony that there were only one or two cases at the judgement [sic] stage. Representative Keyser seconded the motion.
>
> REPRESENTATIVE HANNAH asked John McMaster what the discussion was in the interim

4

committee on this particular issue. Can the legislature go back and take away the rights of people who have already filed under the current statutes? John McMaster stated that the only thing that is really questionable is whether we can take away a judgement [sic] that is already conclusive.

REPRESENTATIVE HANNAH asked John what was the point he had made during the interim committee hearing that said, in effect, that it was questionable whether or not you could go back and take away rights that somebody had under the previous law. Mr. McMaster said that what he was saying was limited to the right to file where a judgement [sic] had already been made. Generally speaking, if you have a statutory right and a statutory methods [sic] of enforcing that right, and the whole statute is repealed, then that right is lost even if a lawsuit is filed.

In Conboy, 693 P.2d 549, we ruled on the validity of Section 14. Conboy involved a complaint of wrongful discharge by a former deputy clerk of the Supreme Court who was not reappointed to that position. We upheld the district court's granting of summary judgment to the State because Conboy never legally held the job before he was discharged. Conboy also alleged that he was not granted his veterans' preference in his discharge. We observed in Conboy:

In substance, the District Court held that the veterans' preference was a government gratuity which was repealable by the legislature at any time by a majority vote. We adopt the analysis of veterans' preference rights in State ex rel. Dolan v. Civil Service Bur. of St. Paul (1972), 293 Minn. 477, 197 N.W.2d 711, 714, where the Minnesota Supreme Court stated:

"Veterans' preference rights are not rights that have been earned through years of service to the state. They are a gratuity, given to the class of persons to show the state's appreciation for service in the Armed Forces of the United States, and they do not amount to vested rights in the recipients . . . . Therefore, a veterans' preference right can be adjusted when and as the legislature sees fit without violating any vested rights." (Citations omitted)

5

> We hold that the veterans' preference rights granted under the repealed portion of the Veterans Preference Act are not rights earned through years of service to the state, but are a gratuity given to citizens of Montana by the State to show its appreciation for service in the Armed Forces. They do not amount to rights vested in the veterans.

Conboy, 693 P.2d at 552.

Nick argues that Conboy and Dolan are distinguishable from the case at bar because neither involved a situation where a veteran had claimed (or "accepted") his statutory preference, only to have it retroactively taken by the legislature. In Conboy, the plaintiff had not claimed the preference prior to filing his complaint. In Dolan, the Minnesota Supreme Court only upheld the legislature's power to prospectively modify the preference scheme. This distinction is legally significant and, for that reason, we must go beyond Conboy and examine Nick's due process claim in light of his situation.

As presented in this case, the dispositive question is: What, for due process purposes, is the nature of a claimed veterans' preference? Nick's equal protection argument also hinges on this inquiry.

The due process clause in the Fourteenth Amendment to the United States Constitution, and in Section 17, Article 2 of the Montana Constitution provides that the state may not deprive a person of life, liberty, or property without "due process of law." This poses the question of whether "claiming" or "accepting" a veterans' preference creates a property interest sufficiently great to hold sway over the legislature's power to retract the same.

Nick suggests two ways in which he acquired a property interest in his preference; by contract or by reliance. Neither of these convince us that Nick had an interest the

legislature was powerless to revoke absent "just compensation."

For Nick's first argument, we reaffirm the position we adopted in Conboy that the veterans' preference is a gratuity, not a contractual right. This Court held that veterans did not acquire any rights beyond those of other citizens for their service in the Armed Forces. Conboy, 693 P.2d at 552. The United States Supreme Court expressly rejected the same contractual right argument in United States v. Teller (1883), 107 U.S. 64, 2 S.Ct. 39, 27 L.Ed. 352. This principle was reaffirmed in Lynch v. United States (1934), 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434, where that Court reasoned:

> Pensions, compensation allowances, and privileges are gratuities. They involve no agreement of parties; and the grant of them creates no vested right. The benefits conferred by gratuities may be redistributed or withdrawn at any time in the discretion of Congress. (Citations omitted.)

292 U.S. at 577. Noting that this principle has never been overruled or modified, the Ninth Circuit Court of Appeals, in Monaco v. United States (9th Cir. 1975), 523 F.2d 935, cert. den. 424 U.S. 914, 96 S.Ct. 1114, 47 L.Ed.2d 319, upheld the constitutionality of the "Dual Compensation Act of 1964," 5 U.S.C. §§3501-3503. That Act revoked preferences originally granted to veterans by the "Veterans' Preference Act of 1944" (originally codified at 5 U.S.C. §861 et. seq.). In Monaco, "the plaintiffs . . . were threatened with loss of their civil service jobs as a consequence of a substantial reduction in force at the [military facility]." 523 F.2d at 937. Addressing the veterans' argument that they were unconstitutionally denied rights vested under the Veterans' Preference Act, the court noted:

> . . . [W]hatever anticipations a serviceman entertained between 1944 and

7

> 1964 with respect to preferential
> advantage in the federal civil service
> were no more than some sort of floating
> expectancy entirely dependent upon the
> Government's bounty. A claim of
> unconstitutional deprivation cannot be
> built upon this foundation.

523 F.2d at 940. See also Kizas v. Webster (D.C.Cir. 1983),

707 F.2d 524 and Mack v. United States (Ct. of Claims 1980),

635 F.2d 828.

Nick does not have a reliance interest in the veterans'

preference unless and until it is actually received. Before

that point, Nick did not incur any direct, specific financial

detriment in gaining the status of a veteran--the cost of war

and the armed services falls on all shoulders, albeit on some

more heavily than others. The preference was given by the

legislature to those more heavily saddled with that burden

for public purposes.

For a reliance interest to be valid, it must be

reasonable. We held in Conboy that veterans acting under the

veterans' preference statute did so in contemplation of the

legislature's power of repeal and cited § 1-2-110, MCA:

> Any statute may be repealed at any time
> except when it is otherwise provided
> therein. Persons acting under any
> statute are deemed to have acted in
> contemplation of this power of repeal.

693 P.2d at 552.

Along this line, Nick argues that Article II, Section

35 of the Montana Constitution requires this Court to find

that the veterans' preference is, in Montana, more than a

gratuity. That Section states: "The people declare that

Montana servicemen, servicewomen, and veterans may be given

special considerations determined by the legislature."

Our reading of this provision is that it is permissive

and does not provide an independent, substantive ground for

finding that the veterans' preference has any greater

incidents of property than that found in Conboy, Dolan or the

8

federal cases discussed above. The meaning of the above clause and the context of the term "special considerations" lead us to the conclusion that the use of the word consideration was not meant as implying a term of art from contract law. This is supported by the minutes of discussion of the above clause at the Constitutional Convention. Delegate McKeon, who proposed Section 35 stated that:

> . . . [T]his section is a <u>permissive section</u> to be added to the <u>Bill of Rights,</u> <u>allowing</u> the Legislature to give special consideration to veterans of wars . . .
>
> I think that we should include a section of this nature in the Bill of Rights to give the Legislature an <u>impetus</u> to try and help these individuals . . . (Emphasis added.)

Vol. VI, Montana Constitutional Convention, verbatim transcript, p. 1842.

Section 35 is permissive, laudatory and suggestive in nature, and was designed to remove any other constitutional impediment that might stand in the way of the preferential treatment of veterans.

Nick also contended at oral argument that the statement in White v. State of Montana (Mont. 1983), 661 P.2d 1272, 1275, 40 St.Rep. 507, 510, that "all persons have a speedy remedy for every injury" is an independent ground for his lawsuit. This language alone does not provide Nick a new cause of action not otherwise recognized. Further, <u>White</u> is distinguishable from the case at bar in that here, as discussed above, no fundamental right is burdened.

This result is supported by Jensen v. State of Montana (Mont. 1984), 689 P.2d 1231, 41 St.Rep. 1971, holding that the remedy for denial of the statutory preference <u>alone</u>, (i.e. absent the other elements of wrongful discharge or discrimination) is a writ of mandamus directing the hiring

9

agency to re-open the application process and fill the vacancy in accordance with Crabtree.

This brings us to Nick's argument that Section 14 offends the equal protection clauses of the Fourteenth Amendment to the United States Constitution, and Article II, Section 4 of the Montana Constitution. In order for this Court to apply a strict scrutiny analysis to this claim, Nick must show that Section 14 either burdens a fundamental right or involves a suspect class. Oberg v. City of Billings (Mont. 1983), 674 P.2d 494, 40 St.Rep. 2034. Otherwise, Section 14 survives review if the legislature has a rational basis for its action.

Nick argues that Section 14 created three classes of veterans: (1) those who received the full Crabtree preference; (2) his class, those who were denied the preference post- Crabtree but failed to obtain a judgment before Section 14 took effect and received nothing; and (3) those who received the tie-breaker preference articulated in Section 14. These classes do not involve a suspect criteria such as race, nationality or alienage, so a strict scrutiny analysis is not required. The legislative history, of Section 14 shows the legislature's valid and rational reasons for its actions. Testimony indicated that many governmental bodies were thrust into difficult situations by the Crabtree decision after interpreting the preference statutes differently for decades. Legislators voiced concerns of fiscal integrity, employee competence, and academic freedom. Ch. 1, Laws 1983, including Section 14, was a rational response to these legitimate concerns.

The legislature's giving of a veterans' preference does not cause that preference to be a fundamental right, as discussed in the first issue. This government gratuity fits within one group of statutory rights discussed by Professor

10

Charles B. Hochman in his article, The Supreme Court and the Constitutionality of Retroactive Legislation, 73 Harv.L.Rev. 692 (1960):

> There are two special types of statutory right which may be altered or repudiated at any time until the benefits conferred by them are actually received. The first of these embraces rights arising from statutes granting gratuities from the government. The Court has said that the general principle governing such statutes is that "benefits conferred by gratuities may be redistributed or withdrawn at any time in the discretion of Congress." [Citing Lynch, 292 U.S. at 577.]
>
> . . .
>
> The key element in both the gratutiy and penalty cases appears to be the absence of any financial cost in the acquisition of the right based upon the original statute. [Citing Steamship Co. v. Joliffe (1865), 69 U.S. (2 Wall.) 450.]
>
> . . .
>
> It should be stressed that the reliance required to remove a right from the category of gratuity or penalty is a financial detriment in the acquisition of the right, and not merely reliance on the right after it accrues, as, for example, the making of a financial commitment in reliance upon the statute. The reason for this stricter requirement is probably similar to that encountered in the cases sustaining the extension of statutes of limitations; the penalty or gratuity is given by a statute for public purposes which are not controlled by the merits of the donee's claim to the right. Under these circumstances, the Court is reluctant to permit the donee to obstruct a reassessment of these purposes by the legislature. (Emphasis added.)

73 Harv.L.Rev. at 724-726. Again, no strict scrutiny analysis applies since Section 14 does not burden a fundamental right and the legislature's reasons for its actions, articulated above, satisfy the rational basis test.

Finally, Nick argues that Section 14 failed to garner the Constitutionally required two-thirds vote of the House of Representatives, and is thus invalid; see Art. II, Sec 18, Mont.Const. We affirm the following holding in Conboy: "We

conclude that the legislature properly could repeal the veterans' preference by a majority vote at any time . . . " 693 P.2d at 552, 42 St.Rep. at 127.

The District Court's order is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

_____
Honorable Thomas C. Honzel,
Judge of the District Court,
sitting in place of Mr.
Justice William E. Hunt, Sr.

12

Mr. Justice Frank B. Morrison, Jr. dissents as follows:

The majority opinion simply fails to address the paramount issue presented in this appeal. That issue is:

WHERE A CAUSE OF ACTION CAN BE STATED FOR A WRONGFUL TERMINATION OR WRONGFUL FAILURE TO HIRE, CAN THAT CAUSE OF ACTION BE ELIMINATED WITHOUT OFFENDING THE ACCESS CLAUSE OF THE MONTANA CONSTITUTION?

Nick was terminated in 1981 and shortly thereafter applied for two similar jobs, but did not receive either. Nick was entitled to preference points under the veterans' preference statute then in existence. If Nick had a claim, the merits of which are not before this Court, that claim had ripened prior to the legislative repeal in 1983.

This case does not involve the question of whether veterans' preference points are a gratuity which can be taken by the legislature. I do agree that a statute granting preference points can be repealed. In other words, a veteran is not entitled to preference points for the life of the veteran simply because they existed at the time the veteran entered the service.

Nick alleges that he was terminated and not rehired because the State of Montana failed to comply with the legal mandate granting preference points. Rather than seek a reopening of the bidding process, Nick sued for damages. The damages claimed arose out of a wrongful discharge and wrongful failure to rehire in that the State failed to follow the law and therefore violated public policy. Such a cause of action is recognized in Montana. Nye v. Department of Livestock (1982), 196 Mont. 222, 639 P.2d 498.

Nick alleges damages. If it be true that the State violated the law in failing to give preference points and Nick was damaged, the cause of action ripened at the time the State acted. At that point Nick had a claim for damages which had value, if true. In enacting the legislation in 1983, and applying it retroactively, the legislature

13

abolished a cause of action for damage to Nick's property interest which was, at that time, recognized by law.

Article II, Section 16 of the 1972 Montana Constitution provides:

> The administration of justice. Courts of justice shall be open to every person, and speedy remedy afforded for every injury of person, property, or character.

We have interpreted this section to afford a constitutional right to full legal redress for every injury to person or property. White v. State of Montana (Mont. 1983), 661 P.2d 1272, 40 St.Rep. 507.

The constitutional right stated in Article II, Section 16 has not been held by this Court to be an absolute right. Rather we have held that the right, being stated in the Declaration of Rights section of the Constitution, is fundamental in character. Being a fundamental right, classification systems which discriminate among litigants are subjected to a strict scrutiny analysis.

Here we have a group of people, veterans and handicapped persons, who had a cause of action when their preference points were unlawfully taken from them. All other employees who were terminated by the State or other employers, in violation of the law, have a recourse in the court system. Veterans are singled out and are denied any recourse although the law was violated in their discharge. Such treatment of veterans, the group to which Nick belongs, must be strictly scrutinized and the discriminatory scheme fail unless there is a compelling state interest shown. White v. State of Montana, supra.

The State cannot satisfy a compelling state interest showing by a mere claim on the legislature's part that a compelling state interest exists. White v. State of Montana, supra. The majority opinion does not even contend that a compelling state interest has here been shown.

14

The discrimination against veterans who had a cause of action and were entitled to redress under the Constitution must fail when subjected to a strict scrutiny analysis. I would remand this case for trial.

_____
Justice

I concur in the dissent of Justice Morrison.

_____
Justice