No. 85-340

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

CLARE J. JENSEN,

        Plaintiff and Appellant,

  -vs-

STATE OF MONTANA, DEPARTMENT OF
LABOR & INDUSTRY, JOB SERVICE
DIVISION, and DAVID HUNTER,

        Defendants and Respondents.

_____

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Joel G. Roth, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Marra, Wenz, Johnson & Hopkins; Neal G. Jensen,
Great Falls, Montana

    For Respondent:

        R. Scott Currey, Dept. of Labor & Industry, Helena,
Montana

_____

Submitted on Briefs: Jan. 16, 1986

Decided: April 17, 1986

Filed: **APR 17 1986**

_____
Clerk

Mr. Justice John C. Harrison delivered the Opinion of the Court.

Clare Jensen appeals from an order of the Cascade County District Court which dismissed Count II of his amended petition for veterans preference in the termination of his job. We affirm the order of the District Court.

The facts of this case are basically undisputed by the parties. Appellant Clare Jensen ("Jensen") was hired by the Employment Security Division, the predecessor of the Job Service Division of the Department of Labor and Industry, in 1961. When initially hired by the Department, Jensen, a veteran, claimed and received an employment preference. In March 1982, Jensen applied for the position of Employment Manager III in the Great Falls Job Service Office. On or about June 16, 1982, Jensen was informed by the Department that he was not chosen for the Great Falls manager position. On June 30, 1982, Jensen was terminated pursuant to a department-wide reduction in force.

On July 5, 1983, Jensen filed an Amended Petition to Enforce Employment Preference in the District Court, Eighth Judicial District, in and for the County of Cascade. His amended petition contained three counts. Count I alleged that Jensen was not hired by the respondents, (hereinafter "Department"), as the manager of the Great Falls Job Service Office in violation of his veterans preference. Count II alleged that he was terminated pursuant to a reduction in force by the Department in violation of his veterans prefer-ence, and Count III alleged that the 1982 interview process utilized by the Department in filling the manager's position

2

violated a rule of the now defunct Montana Merit System Council.

In July 1983, in response to Jensen's amended petition, the Department filed a Consolidated Motion that in part asked the District Court to dismiss Jensen's amended petition. In August 1983, the parties filed with the District Court a stipulated set of facts and an agreement that the court would hear only Jensen's Count I. Paragraph 5 of the Stipulation dealt with the remaining two counts of Jensen's amended petition. It read:

> Petitioner's Counts Two and Three shall be reserved and that all claims and defenses arising from Counts Two and Three are reserved as to all interested parties. Any statutes of limitation pertinent to Counts Two and Three are tolled pending the resolution of petitioner's Count One.

On September 19, 1983, the District Court issued an order ruling on Jensen's Count I. The court found that Jensen had been denied his veterans preference. In addition, the District Court ordered the Department to appoint Jensen to the manager's job and to provide him with backpay. The Department appealed this order. In Jensen v. State of Montana, et al. (Mont. 1984), 689 P.2d 1231, 41 St.Rep. 1971, this Court affirmed in part and vacated in part the District Court's order. This Court concluded:

> For the foregoing reasons, we vacate that part of the judgment that addresses Jensen's remedy and remand to the District Court with directions to order the Department of Labor and Industry to reopen the manager position to the original applicants, grant Jensen and the other preferred applicants their preference, and otherwise fill the vacancy in accordance with Crabtree.

Jensen, 689 P.2d at 1235.

The Department subsequently did reopen the manager's position in question, reinterviewed the preferred applicants, including Jensen, and filled the position with a preferred applicant, not Jensen.

While the Department's appeal involving Count I was pending before this Court, however, the Montana legislature met in special session in December 1983 and enacted a new Veterans' and Handicapped Persons' Employment Preference Act which became effective December 20, 1983. This new act retroactively repealed the old Veterans Preference Act under which Jensen had filed his amended petition. In doing so, the legislature decreed that claims under the old act were barred if they were not reduced to judgment on the effective date of the new act. Only claims that had been reduced to judgment before December 20, 1983, were enforceable, and no claims under the old act could be made under the new act.

In February 1985, the Department filed an Amended Motion to Dismiss asking the District Court to dismiss the remaining Counts II and III of Jensen's amended petition. With regard to Count II, the subject of this appeal, the Department argued that Section 14 of the new Veterans Preference Act (which is now known as the "retroactive repealer") had the effect of barring Count II and its allegation that Jensen was wrongfully terminated by the Great Falls Employment office because the person who was retained in his position was not a veteran. The Department argued that since Jensen's claim in Count II was not reduced to final judgment before the effective date of the new act (December 20, 1983), his preference claim was barred.

In March 1985, Jensen filed a Motion of Partial Summary Judgment as to his Count III. In June 1985, the District

4

Court granted the Department's motion to dismiss Counts II and III of Jensen's amended petition and denied Jensen's Motion for Partial Summary Judgment. Jensen then commenced this appeal in which he only appeals that portion of the District Court's order dismissing Count II of his amended petition.

Jensen presents the following issue for review by this Court:

Whether Jensen's claim of veterans preference under Count II, which was expressly reserved by the Stipulation of the parties, survived the Montana legislature's "retroactive repealer."

Jensen's Count II is brought pursuant to §§ 10-2-201 through 10-2-206, MCA (repealed 1983). In Crabtree v. Montana State Library (Mont. 1983), 665 P.2d 231, 40 St.Rep. 963, issued approximately one month before Jensen filed his amended petition, this Court held that § 10-2-201 through § 10-2-206 granted qualified veterans and handicapped civilians an "absolute preference" over non-veterans and non-handicapped applicants in public employment. Sections 10-2-201 through 10-2-206, referred to here as the old Veterans Preference Act, were repealed by the legislature in special session in December 1983 as part of its adoption of the new "Montana Veterans' and Handicapped Persons' Employment Preference Act," § 39-30-101, et seq. MCA. Section 14 of the act reads:

> Section 14. Repealer. Sections 10-2-201 through 10-2-206, MCA, are repealed. This repeal applies retroactively to bar any claim of violation or application of 10-2-201 through 10-2-206 that has not been reduced to judgment, whether or not the judgment is final, on the effective date of this act [December 20, 1983]. Claims under 10-2-201 through 10-2-206

that have been reduced to judgment, whether or not the judgment is final, on the effective date of this act, are enforceable. No claim for a violation of 10-2-201 through 10-2-206 may be made under section 8 of this act [39-30-206 and 39-30-207].

As the Department points out, the validity of Section 14 was affirmed by this Court in Conboy v. State of Montana (Mont. 1985), 693 P.2d 547, 42 St.Rep. 120. Jensen now argues that Count II, although not yet reduced to judgment, is not barred by Section 14 due to a Stipulation (quoted above) between the parties herein "reserving" his claim. Jensen's argument can be summarized by the following excerpts from his brief:

The issue in this appeal can be stated simply: Can the government, obliged as though a private person to observe the terms of its contracts, totally repudiate by a legislative act its earlier express agreement to reserve an individual's claims. That is, can the government forbid one to pursue a claim which it had earlier affirmatively promised an individual he could preserve?

. . .

Simply stated, the Department is now seeking to backtrack on its earlier Stipulation, for the sole purpose of trapping Jensen who relied in good faith on such written agreement when he did not bring Count Two on for a hearing and reduce it to judgment while awaiting the Department's appeal of Count One. By abiding by his agreement to wait for Count One to be resolved, Jensen should not now be penalized. Judicial economy was achieved by pursuing Count One to a conclusion.

. . .

For his patience and consideration . . . Jensen should not be thrown out of Court. Instead, the Department should be compelled to abide by the Stipulation, and its express agreement to reserve Jensen's Count Two preference claim pending the resolution of Count One, even though a

6

special session of the Montana
Legislature has intervened.

Jensen's argument in this case, although intriguing and persuasively written, is flawed and cannot stand. This Court may sympathize with Jensen's position, but we cannot ignore the realities of the current law in this state.

Both parties seem to agree that paragraph 5 of the Stipulation was entered into voluntarily for the purpose of simplifying litigation. The intent seems to be clear: to get Count I, apparently viewed by the parties as the key issue, before the District Court as quickly as possible.

We agree with Jensen that the Stipulation should be viewed as a contract or agreement that is to be interpreted pursuant to contract principles. See: Olson v. Idaho Department of Water Resources (Idaho 1983), 666 P.2d 188, and Thayer v. Federal Life Insurance Company (Wis. 1935), 258 N.W. 849. Jensen seems to argue that this Stipulation creates an obligation on behalf of the Department to "reserve" Jensen's claim for an indefinite period and regardless of the action of the legislature. As the Department points out, however, this argument fails to take into consideration the gratuitous character of Jensen's underlying veterans preference claim.

In Conboy this Court held, in discussing the character of the veterans preference created by the old preference law, that:

> We hold that the veterans' preference rights granted under the repealed portion of the Veterans Preference Act are not rights earned through years of service to the state, but are a gratuity given to citizens of Montana by the State to show its appreciation for service in the Armed Forces. They do not amount to rights vested in the veterans.

7

> We further point out that in repealing the old veterans' preference law, § 10-2-201 through 10-2-206, MCA, the legislature was not faced with any statutory or constitutional limitations on its rights of repeal. There is no provision in that Act or in the Montana Constitution limiting the legislature's right to repeal the preference.. . . We conclude that the legislature properly could repeal the veterans' preference by a majority vote at any time and that veterans acting under the old law are deemed to have acted in contemplation of that power of repeal on the part of the legislature.

Conboy, 693 P.2d at 552.

This position adopted in Conboy was recently reaffirmed by this Court in Femling v. Montana State University (Mont. 1986), 713 P.2d 996, 43 St.Rep. 235, and Nick v. Montana Department of Highways (Mont. 1985), 711 P.2d 795, 42 St.Rep. 1926. In Fleming, this Court stated:

> "A citizen can have no vested right in a general law which can preclude its amendment or repeal, and there is no implied promise on the part of the state to protect its citizens against incidental injury occasioned by changes in the law." Stanford v. Coram (1903), 28 Mont. 288, 293, 72 P. 655, 656. As we noted in Conboy v. State (Mont. 1985), 693 P.2d 547, 42 St.Rep. 120, a veteran acting under the absolute veterans' preference statute did so in contemplation of the legislature's power of repeal. Statutes may be replaced at any time, and a person acting under a statute is "deemed to have acted in contemplation of this power of repeal." Section 1-2-110, MCA.

> . . .

> In Conboy, we stated that the preference statute was a gratuity given to veterans by the State. It did not amount to a right vested in the veterans. Conboy, 693 P.2d at 552. We reaffirmed this conclusion in Nick v. Montana Dept. of Hwys. (Mont. 1985), 711 P.2d 795, 42 St.Rep. 1926.

8

<u>Fleming</u>, 713 P.2d at 998.

When viewed in light of <u>Conboy</u>, <u>Femling</u> and <u>Nick</u>, the Department correctly argues the Stipulation must be viewed as an agreement to reserve a claim based on a gratuity that the legislature was empowered to repeal at any time. Jensen and other veterans are deemed to have "acted in contemplation" of this power to repeal. In other words, Jensen entered the Stipulation with knowledge of the legislature's power to repeal the old Veterans Preference Law at any time.

Jensen's strong reliance on Perry v. United States (1935), 294 U.S. 330, 55 S.Ct. 432, 79 L.Ed. 912, indicates that he is confusing the gratuitous nature of his claim with the binding contractual nature of the Stipulation. As the Department points out, a close reading of <u>Perry</u> shows that the situation in that case is easily distinguishable from the present case. In <u>Perry</u>, the Court was asked to decide whether a joint resolution passed by Congress allowing the United States government to pay off government bonds with currency rather than gold, as called for in the bond obligation itself, was proper. The Court found that Congress could not change its contractual obligation by legislation once that obligation had been incurred. The implication is that the bond holder's right to be paid in gold had vested and once vested could not be tampered with by Congress.

Jensen relies on this case to argue that the Montana legislature's passage of Section 14 illegally repudiates the Stipulation or "contract" he had with the Department reserving his Count II claim. Jensen sums up his argument under this issue by stating:

> [I]n <u>Perry</u> the point is inescapable: <u>a</u> <u>government</u> <u>cannot</u> <u>repudiate</u> <u>its</u> <u>own</u> <u>contracts</u>.

9

. . .

> A government, such as the State of Montana in this case, must be held to the terms of its contracts. If its agent stipulates to reserve the claims of an individual under an existing legislative act, that Stipulation cannot be repudiated and annulled simply on the pretext of the subsequent "fluctuating policy" of the Legislature.

. . .

> Just as the bond before the Court in Perry was "an obligation of the United States," so too is the Stipulation executed by counsel for the Department an obligation of the State of Montana.

The Department correctly points out, however, that in Perry the obligation at issue was a bond obligation creating vested rights in the bond holder. The government was attempting to modify these vested rights by giving bond holders less than they had bargained for. In this case, the obligation that Jensen relies on is a Stipulation reserving the enforcement of a claim. It does not create a claim as in Perry. The Stipulation reserves a claim that can be eliminated at any time by legislative action. The fact that the claim was reserved does not change the character of the claim--it can still be eliminated by the legislature at any time.

We agree with the Department that Jensen is attempting to make a gratuity into a vested right. His argument implies that the preference creates an obligation, rather than a gratuity, however this is not the current law in light of Femling, Nick and Conboy, supra. The Stipulation, therefore, reserved only what existed at the time it was entered into (a gratuity). It cannot now be used to give Jensen more than he originally had.

The District Court's order dismissing Jensen's Count II is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

11

Mr. Justice John C. Sheehy, dissenting:

Justice sometimes takes strange forms. This case is illustrative.

When Jensen first brought his case here, Jensen v. State (1984), 689 P.2d 1231, 41 St.Rep. 1971, this Court held that the absolute preference accorded veterans under the Veterans and Handicapped Civilian Employment Preference Act (§ 10-2-201, et seq. MCA) was applicable, and therefore we remanded the case so that the manager position could be reopened and a decision made in the accordance with the preference. In that case both Justice Harrison and myself dissented, saying that since Jensen had borne the heat of the battle to secure the result that recognized the veterans preference law, he should be the recipient of that benefit.

In a later case involving Charles F. Femling (Mont. 1986), 713 P.2d 996, 43 St.Rep. 235, this Court held that the legislature could retroactively withdraw all veterans preference rights without violating the due process clause of the state or federal constitution. I dissented in the Femling case on the ground that Femling had applied for state employment at a time when he had a statutory right to preference, he had claimed the preference, his right had vested and so he was entitled to the job.

Now, Jensen is back again. What happened to him before the Department was what we predicted, that the Department of Labor and Industry would never grant him the job to which he had proven his right, but in retaliation for beating the Department in court, the appointment would go to some other veteran. The majority opinion now condones this result.

I dissent from the majority opinion here on the grounds that Jensen was entitled to the job from the beginning, was entitled to the job by reason of his being successful in the first Jensen case, and that his right had become vested, as I argued in Femling, from the time that he demanded the benefit of the preference law in his application for appointment.

In an era when this country seems to be undergoing a binge of patriotism with country-rock singers blazing out their love for the flag, and our armed forces confronting every two-bit nation in the world, the attitude of this State through its legislature and courts towards the men and women who actually gave something of themselves to protect the country is a contradiction. Rudyard Kipling must have been looking down the long years to this State when he wrote of the difference in treatment accorded Tommy Atkins in peace-time and in war-time:

> Then its Tommy this an' Tommy that and "Tommy,
> 'ow's your soul?"
> But its "Thin red line of 'eroes" when the drums
> begin to roll.
> The drums begin to roll my boys, the drums begin
> to roll.
> Oh it's "Thin red line of 'eroes" when the drums
> begin to roll.
>
> We aren't no thin red 'eroes nor we aren't no
> blackguards too,
> But single men in barricks most remarkable like
> you.
> An' if sometimes our conduck isn't all your fancy
> paints
> Why, single men in barricks don't grow into
> plaster saints.
>
> While its Tommy this and Tommy that an' "Tommy
> fall be'ind",
> But it's "Please to walk in front, sir" when
> there's trouble in the wind.
> There's trouble in the wind, my boys, there's
> trouble in the wind.
> Oh it's "Please to walk in front, sir", when
> there's trouble in the wind.

John C. Sheehy
_____
Justice

Mr. Justice Frank B. Morrison joins in the dissent of Mr. Justice John C. Sheehy.

-13-