*447 JUSTICE GRAY,
concurring in part and dissenting in part:
I concur with that part of the majority’s opinion which holds that James B. Beam Distilling Co. v. Georgia (1991), 501 U.S._, 111 S.Ct. 2439, 115 L.Ed.2d 481, is not applicable to the issue of the retroactivity of Davis v. Michigan Department of Treasury (1989), 489 U.S. 803, 109 S.Ct. 1500, 103 L.Ed.2d 891. However, I respectfully dissent from that part of the majority’s opinion which holds that Davis should not be applied retroactively.
I agree with the majority that the determination of whether the United States Supreme Court’s decision in Davis is to be applied retroactively or only prospectively is governed by the three-pronged test enunciated in Chevron Oil Co. v. Huson (1971), 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 and utilized by this Court in LaRoque v. State (1978), 178 Mont. 315, 583 P.2d 1059. However, I disagree with the conclusions reached by the majority under each prong of the test as applied to the Supreme Court’s decision in Davis. Furthermore, I believe that the weakness of the majority’s opinion is clearly demonstrated by its heavy reliance on the overturned decision of the Michigan Court of Appeals and the lone dissent of Justice Stevens in Davis. Such reliance by the majority largely ignores the Davis Court majority’s rationale in reaching its decision.
For a decision to be applied only prospectively, the first prong of the Chevron test requires that the decision “establish a new principle of law, either by overruling clear past precedent on which litigants may have relied ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed.” Chevron, 404 U.S. at 106, 92 S.Ct. at 355.. Because Davis did not overrule clear past precedent, this Court’s analysis is properly limited to the consideration of whether the decision in Davis was clearly foreshadowed.
The majority states that the Davis decision was not clearly foreshadowed on the bases that in order to reach its decision in Davis, the Supreme Court had to (1) extend 4 U.S.C. § Ill to federal retirees receiving pension benefits; (2) extend the doctrine of intergovernmental tax immunity to employees of the governmental entity, as well as the entity itself; and (3) decide that the proper standard for determining the validity of a state statute where intergovernmental tax immunity is involved is a “significant difference” standard, rather than a rational basis standard. The majority also states that the fact that twenty-three states, including Montana, had tax schemes *448 similar to that of Michigan which the Supreme Court invalidated in Davis, lends support to its conclusion that the holding in Davis was not clearly foreshadowed.
It is my view that a plain reading of the Davis decision itself, together with previous United States Supreme Court decisions, leads to the irrefutable conclusion that the Davis decision was clearly foreshadowed. Contrary to the majority’s conclusion, the Supreme Court in Davis did not “extend” 4 U.S.C. § 111 to federal retirees receiving pension benefits. The Supreme Court made it very clear that § 111 applies to both current and past employees and to pension benefits based upon the plain language of the statute:
“As a threshold matter, the State argues that § 111 applies only to current employees of the Federal Government, not to retirees such as appellant. In our view, however, the plain language of the statute dictates the opposite conclusion. Section Ill by its terms applies to ‘the taxation of pay or compensation for personal services as an officer or employee of the United States.’
“We have no difficulty concluding that civil service retirement benefits are deferred compensation for past years of service rendered to the Government.” [Emphasis in original.]
Davis, 489 U.S. at 808, 109 S.Ct. at 1503-04.
“Any other interpretation of the nondiscrimination clause would be implausible at best. It is difficult to imagine that Congress consented to discriminatory taxation of the pensions of retired federal civil servants while refusing to permit such taxation of current employees, and nothing in the statutory language or even in the legislative history suggests this result.”
Davis, 489 U.S. at 810, 109 S.Ct. at 1505. Assuming that the majority of eight Justices of the United States Supreme Court intended the plain meaning of its words, there is no room for doubt that the Supreme Court’s holding that federal retirees fall within the protection of § Ill was clearly predictable or foreshadowed.
Furthermore, I believe that Davis is directly on point with Jensen v. State Department of Labor and Industry (1984), 213 Mont. 84, 689 P.2d 1231. As the majority opinion notes, this Court in Jensen held that Crabtree v. Montana State Library (1983), 204 Mont. 398, 665 P.2d 231, did not create any new law because it simply was stating the plain language of the Veteran’s Preference Act. In Davis, the Supreme Corut did not create any new law because, as the Supreme *449 Court itself stated, the plain language of § Ill dictated its holding that the statute applies to both current and past employees and to the pension benefits. Davis, 489 U.S. at 808, 109 S.Ct. at 1503-04.
The majority would have the reader believe that the Supreme Court’s decision in Davis constituted an unforeshadowed, abrupt and fundamental change in the doctrine of intergovernmental tax immunity through its holding that employees of the governmental entity, as well as the governmental entity itself, come within the protection of the doctrine. The majority states that “[t]he Davis language addressing the relationship between intergovernmental tax immunity and 4 U.S.C. § 111 clearly breaks new ground.” At 1260-61. This is simply not the case as evidenced by the Supreme Court’s own observations in Davis.
“On its face, § Ill purports to be nothing more than a partial congressional consent to nondiscriminatory state taxation of federal employees. It can be argued, however, that by negative implication § Ill also constitutes an affirmative statutory grant of immunity from discriminatory state taxation in addition to, and coextensive with, the pre-existing protection afforded by the constitutional doctrine. Regardless of whether § Ill provides an independent basis for finding immunity or merely preserves the traditional constitutional prohibition against discriminatory taxes, however, the inquiry is the same. In either case, the scope of the immunity granted or retained by the nondiscrimination clause is to be determined by reference to the constitutional doctrine. Thus, the dispositive question in this case is whether the tax imposed on appellant is barred by the doctrine of intergovernmental tax immunity.” [Emphasis added.] Davis, 489 U.S. at 813-14, 109 S.Ct. at 1507.
“It is true that intergovernmental tax immunity is based on the need to protect each sovereign’s governmental operations from undue interference by the other. Graves [v. People ex rel. O’Keefe], 306 U.S. [466], at 481 [59 S.Ct. 595, 83 L.Ed. 927]; McCulloch v. Maryland, 4 Wheat., at [316] 435-436, [17 U.S. 316, 4 L.Ed. 579], But it does not follow that private entities or individuals who are subjected to discriminatory taxation on account of their dealings with a sovereign cannot themselves receive the protection of the constitutional doctrine. Indeed all precedent is to the contrary. In Phillips Chemical Co., supra, for example, we considered a private corporation’s claim that a state tax discriminated against private lessees of federal land. We concluded that the tax “discriminate[d] unconstitutionally against the United States and its lessee,” and accordingly held that *450 the tax could not be exacted. 361 U.S., at 387, [80 S.Ct. at 481] ... . [Emphasis in original.] The State offers no reasons for departing from this settled rule, and we decline to do so.” [Emphasis added.]
Davis, 489 U.S. at 814-15, 109 S.Ct. at 1507. Again, assuming the Davis Court intended the plain meaning of its words, there can be no question that it was clearly predictable or foreshadowed that federal retirees fall within the protection of the doctrine of intergovernmental tax immunity.
I also disagree with the majority’s conclusion that Davis was not clearly foreshadowed because the Supreme Court had to decide that the proper standard for determining the validity of the state tax scheme is a “significant difference” standard, rather than a rational basis standard. The Supreme Court in Davis made it clear that the proper standard to be applied when intergovernmental tax immunity is involved was settled under existing authority.
“Under our precedents, £[t]he imposition of a heavier tax burden on [those who deal with one sovereign] than is imposed on [those who deal with the other] must be justified by significant differences between the two classes.’ Phillips Chemical Co. v. Dumas Independent School Dist., 361 U.S., at 383 [80 S.Ct. at 479.] In determining whether this standard of justification has been met, it is inappropriate to rely solely on the mode of analysis developed in our equal protection cases. We have previously observed that ‘our decisions in [the equal protection] field are not necessarily controlling where problems of intergovernmental tax immunity are involved,’ because ‘the Government’s interests must be weighed in the balance.’ Id., at 385, [80 S.Ct. at 480]. Instead, the relevant inquiry is whether the inconsistent tax treatment is directly related to, and justified by, ‘significant differences between the two classes.’ Id., at 383-385, 80 S.Ct. at 479-80.” [Emphasis added.]
Davis, 489 U.S. at 815-16. 109 S.Ct. at 1508. The Supreme Court was citing its decision in Phillips Chemical Co. v. Dumas Independent School Dist. (1960), 361 U.S. 376, 80 S.Ct. 474, 4 L.Ed.2d 384, decided nearly thirty years before Davis. Thus, the Supreme Court’s application of the “significant difference” standard in Davis was clearly foreshadowed in light of this existing precedent.
The majority places great weight on the State’s (and other states’) reliance on the previously uncontested nature of 4 U.S.C. § Ill with respect to its application to federal retirees. In my view, the fact that twenty-three states, including Montana, had tax schemes similar to the one invalidated in Davis is conclusive of nothing more than that *451 Davis decided an issue of first impression. It does not follow, as the majority opinion implies, that the Davis decision was not foreshadowed. Where the plain language of the statute involved, together with existing precedent, mandates a particular holding, as was clearly shown in Davis, the prevalence of the wrong is irrelevant to the determination of whether that holding was clearly foreshadowed.
In applying the second prong of the Chevron test, the majority concludes that retroactive application of Davis would not promote the concept of intergovernmental tax immunity. I disagree. In my view, the doctrine of intergovernmental tax immunity can only be furthered by the retroactive application of Davis. Refusing to apply Davis retroactively means that this Court has condoned the State’s total disregard for the plain language of 4 U.S.C. § 111 and is akin to a continuation of past discrimination. Such a result does not further and, indeed, retards the doctrine of intergovernmental tax immunity in that it does not tend to deter future State violations of the doctrine.
With respect to the third prong of the Chevron test, I disagree with the majority’s conclusion that the equities in this case favor a non-retroactive application of Davis. In considering the equities of retroactive application of a judicial decision, I am fully aware that great weight must be given to the State’s reliance upon a presumptively valid statute, enacted in good faith and by no means plainly unlawful. See Lemon v. Kurtzman (1973), 411 U.S. 192, 93 S.Ct. 1463, 36 L.Ed.2d 151. However, where the statute in question is plainly violative of federal statutory and case law, as was Montana’s tax scheme in light of the Supreme Court’s rationale in Davis, the State’s reliance interests are of little or no import. McKesson Corp. v. Div. of Alcoholic Beverages and Tobacco (1990), 495 U.S. 18,_, 110 S.Ct. 2238, 2257, 110 L.Ed.2d 17, 44.
It is true, as the majority states, that refunds to the federal retirees would result in a financial burden on the other taxpayers of the State; it also is true, however, that those taxpayers have benefited greatly from the federal retirees’ overpayment of taxes over many years. In any event, the State’s and taxpayers’ exposure to the disruptive impact of the tax scheme’s invalidation is limited because of the five-year statute of limitations.
Furthermore, the State would not necessarily have to refund the unconstitutionally collected taxes. The federal retirees have indicated their willingness to accept a tax credit mechanism in lieu of *452 actual refunds as a possible remedy which, in my view, has the potential of softening the impact on the State’s financial stability even more.
Finally, it must be recognized that, notwithstanding the financial impact to the State, substantial inequities have been wrought upon the federal retirees over a period of many years. Retirees who paid the discriminatory tax and have since left Montana or died would receive no remedy even under a proper resolution of this case. Others would receive back only a small portion of the discriminatory taxes they paid, no matter what remedy might be fashioned, because of the applicable statute of limitations. How the majority can conclude that the Chevron “equities” prong favors the State, as opposed to the federal retirees who were wrongfully discriminated against by the State, is simply beyond my understanding.
I would reverse the judgment of the District Court and hold that under the Chevron test, the Davis decision is to be applied retroactively. Having so held, I would remand this case to the District Court for a determination of the proper remedy to be provided to the federal retirees.