No. 90-450

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

EDMUND F. SHEEHY, MARGARET FLEMING,
GEORGE McGOVERN, DONALD ZACK,
RICHARD G. BRANCH, CHARLES W.
VanDIEST, AND ARNOLD S. WIRTALA,
on behalf of themselves and all other
similarly situated federal employees,
both civil service employees and
military employees, residing in the
State of Montana, who have been
subjected to paying state income tax
on their pensions,

        Plaintiffs and Appellants,

    v.

STATE OF MONTANA, THE DEPARTMENT OF
REVENUE, a State Agency within the
Executive Branch of State Government,
of the State of Montana,

        Defendants and Respondents.

APPEAL FROM:   District Court of the First Judicial District,
              In and for the County of Lewis and Clark,
              The Honorable Jeffrey M. Sherlock, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Edmund F. Sheehy, Jr. (argued), Cannon & Sheehy;
        Helena, Montana

    For Respondent:

        R. Bruce McGinnis (argued), Department of Revenue,
        Helena, Montana

Submitted:   August 15, 1991

Decided:   November 14, 1991

Filed:

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

In this case, we affirm a decision of the District Court for the First Judicial District, Lewis and Clark County, that the plaintiffs are not entitled to refunds for state taxes paid for the years 1983 through 1988 on their retirement benefits received under the Federal Employees' Retirement Act.

The issue is whether the opinion of the United States Supreme Court in Davis v. Michigan Department of the Treasury (1989), 489 U.S. 803, 109 S.Ct. 1500, 103 L.Ed.2d 891, should be retroactively applied, entitling the plaintiffs to refunds for taxes paid in previous years.

Plaintiffs are retired federal employees who filed a petition for declaratory relief seeking to have § 15-30-111(2)(c)(i), MCA (1989), declared unconstitutional. That statute provided that Montana state income tax would be assessed on benefits received under the Federal Employees' Retirement Act in excess of $3,600. In contrast, under § 19-3-105, MCA (1989), all retirement benefits received under Montana's Public Employees' Retirement System were exempt from state and local taxes.

Following the decision of the United States Supreme Court in Davis in March 1989, the District Court adopted the parties' stipulation to the effect that § 15-30-111(2)(c)(i), MCA (1989), is invalid for tax years commencing after December 31, 1988. The plaintiffs then moved for summary judgment that Davis should be applied retroactively and that they are entitled to refunds for previous tax years, subject to the statute of limitations. (In

2

<u>Davis</u>, the state had conceded that refunds for previous years would be proper if the court found for plaintiffs.)

Using the factors set forth in LaRoque v. State (1978), 178 Mont. 315, 583 P.2d 1059, the District Court determined that <u>Davis</u> should not be applied retroactively. The court ruled that the <u>Davis</u> decision was neither predictable nor clearly foreshadowed. It decided that retroactive application of <u>Davis</u> would not promote the doctrine of intergovernmental tax immunity because it had already required that, in the future, federal and state retirees must be treated the same. Finally, it stated that adding the cost of refunds to Montana's budget deficit would be inequitable to the citizens of Montana. Plaintiffs appeal.

Should the United States Supreme Court's opinion in <u>Davis</u> be applied retroactively, entitling the plaintiffs to refunds for taxes paid in previous years?

We will first review the major elements of the opinion of the United States Supreme Court in <u>Davis</u>. In that case, the plaintiffs challenged a Michigan tax scheme which exempted from state taxation all retirement benefits paid by the state to its retired employees but taxed retirement benefits paid by other employers, including the federal government. The Michigan Court of Appeals upheld the tax scheme, ruling that 4 U.S.C. § 111 did not apply to retirees and that, under a rational basis test, the taxing scheme was not unconstitutional because it furthered the state's interest in attracting and retaining qualified employees. The Michigan Supreme

Court denied leave to appeal. The United States Supreme Court granted certiorari and reversed, holding that the Michigan tax scheme violated the concept of intergovernmental tax immunity.

In delivering the Court's opinion, Justice Kennedy first disposed of the State's argument that 4 U.S.C. § 111 applies only to current employees of the federal government. In relevant part, that statute provides:

> The United States consents to the taxation of pay or compensation for personal service as an officer or employee of the United States . . . by a duly constituted taxing authority having jurisdiction, if the taxation does not discriminate against the officer or employee because of the source of the pay or compensation.

The Court stated that:

> We have no difficulty concluding that civil service retirement benefits are deferred compensation for past years of service rendered to the Government. [Citations omitted.] And because these benefits accrue to employees on account of their service to the Government, they fall squarely within the category of compensation for services rendered "as an officer or employee of the United States."

Davis, 489 U.S. at 808. The Court then went on to conclude that the nondiscrimination clause applies to retirement benefits because retirement benefits are included in "pay or compensation." Davis, 489 U.S. at 809.

The Court next discussed 4 U.S.C. § 111 as a codification of the rule that the doctrine of intergovernmental tax immunity does not prohibit nondiscriminatory state taxation of federal employees. Davis, 489 U.S. at 810-14. The Court stated that although intergovernmental tax immunity is based on the need to protect each sovereign's governmental operations from undue influence by the

4

other, private entities or individuals who are subjected to discriminatory taxation on account of their dealings with a sovereign can also receive the protection of the constitutional doctrine. Davis, 489 U.S. at 814-15.

The Court then stated that the mode of analysis developed in equal protection cases was "inappropriate" in Davis. Instead, the test is whether the inconsistent tax treatment is related to and justified by significant differences between the two classes. Davis, 489 U.S. at 816.

The Court concluded that significant differences were not present and that therefore the tax act in question violated principles of intergovernmental tax immunity. Davis, 489 U.S. at 817. The Court remanded the case for further proceedings.

Plaintiffs also direct the Court's attention to the United States Supreme Court's opinion in James B. Beam Distilling Co. v. Georgia (1991), 501 U.S. ___, 111 S.Ct. 2439, 115 L.Ed.2d 481. The opinion in Jim Beam was issued on June 20, 1991, after oral argument in the present case. In Jim Beam, the Court held that it is error to refuse to apply a rule of federal law retroactively after the case announcing the rule has already done so. Plaintiffs argue that rule is dispositive and the decision in Davis must be applied retroactively here because it was applied retroactively in that case. Both parties submitted supplemental briefs discussing the application of Jim Beam to this case.

When Jim Beam was decided, pending before the Court on applications for certiorari were two cases in which retired federal

5

employees in South Carolina and Virginia seek refunds of state income taxes under theories similar to those argued here. After Jim Beam was decided, the Court granted certiorari in both of those cases, vacated the state court decisions denying refunds, and remanded the cases to the state courts for "further consideration" in light of Jim Beam. Bass v. State of South Carolina (1991), ___ U.S. ___, 111 S.Ct. 2881, 115 L.Ed.2d 1047; Harper v. Virginia (1991), ___ U.S. ___, 111 S.Ct. 2883, 115 L.Ed.2d 1049.

The fact that the Supreme Court remanded Bass and Harper rather than simply reversing them indicates the Court's uncertainty as to whether Jim Beam applies to the issue of Davis's retroactivity. We conclude that it does not apply. In Davis, the State had conceded that a refund was appropriate if the Court ruled for the appellants. Davis, 489 U.S. at 817. Because of that concession, the Court did not consider the issue of whether retroactive application should be granted. We therefore conclude that Davis is not authority for application of its rule retroactively. The underpinnings of the decision in Jim Beam are the doctrine of stare decisis and the principle of equality to all similarly situated litigants. Jim Beam, 111 S.Ct. at 2446. Because Davis did not rule upon the issue of retroactivity, we conclude that the doctrine of stare decisis does not apply. We conclude that the principle of equality or equal treatment to similarly situated litigants does not require that all future litigants, including the litigants in the present case, are bound by the stipulation of the State of Michigan in Davis.

6

We now consider whether retroactive application of the law set forth in Davis is appropriate in this case. In Chevron Oil v. Huson (1971), 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296, the United States Supreme Court recognized three factors to be considered before a rule of nonretroactive application of a judicial decision is adopted. Those factors are 1) whether the decision establishes a new principle of law either by overruling established precedent on which litigants have relied, or by deciding an issue of first impression whose resolution was not foreshadowed, thereby leading to the conclusion that the decision should not be applied retroactively; 2) whether retroactive application will further or retard operation of the rule in question; and 3) whether substantial inequity will result from retroactive application. Chevron, 404 U.S. at 106-07. Use of these three factors was adopted by this Court in LaRoque, 583 P.2d at 1061.

Plaintiffs argue that the result in Davis was clearly fore-shadowed under the longstanding principle of intergovernmental tax immunity and as a logical extension of the Court's decisions in a series of cases. However, as the State points out, the holding in Davis required three extensions of prior law. We will examine all three extensions of prior law to determine if each extension was clearly foreshadowed by previous cases.

In its first extension, the Davis Court pointed out that while retirement pay is not actually disbursed during the time an individual is working for the government, the amount of benefits to be received in retirement are based and computed upon the

individual's salary and years of service. The Court "had no difficulty" concluding that civil service retirement benefits are deferred compensation for past years of service and therefore fall within the category of compensation for services rendered as an officer or employee of the United States. As authority for that conclusion, three federal circuit cases were cited. Davis, 489 U.S. at 808.

In its Davis holding, the Michigan Court of Appeals rejected the contention that 4 U.S.C. § 111 invalidated the Michigan tax, noting that the statute applied only to federal "employees." Then the Michigan court determined that the appellants' status under federal law in Davis was that of an "annuitant" rather than as an employee and that as a result 4 U.S.C. § 111 had no application. The logical determination by the Michigan court together with the action of other states which used tax schemes like Michigan's and Montana's, suggest there is a significant question of foreshadowing the application of 4 U.S.C. § 111.

The second extension of prior law took place when the Court established the connection between the doctrine of intergovernmental tax immunity and the protection against discriminatory taxation of individuals under 4 U.S.C. § 111. Plaintiffs argue that the doctrine of intergovernmental tax immunity had been extended to protect individuals at least since the decision in Phillips Chemical Co. v. Dumas Independent School Dist. (1960), 361 U.S. 376, 80 S.Ct. 474, 4 L.Ed.2d 384. But the Davis language addressing the relationship between

8

intergovernmental tax immunity and 4 U.S.C. § 111 clearly breaks new ground:

> [I]t is reasonable to conclude that Congress drew upon the constitutional doctrine [of intergovernmental tax immunity] in defining the scope of the immunity retained in § 111. . . . Hence, we conclude that the retention of immunity in § 111 is coextensive with the prohibition against discriminatory taxes embodied in the modern constitutional doctrine of intergovernmental tax immunity.

Davis, 489 U.S. at 813. The conclusion that the protection against discriminatory taxation retained under 4 U.S.C. § 111 is coextensive with the protection under the doctrine of intergovernmental tax immunity represented an extension of prior law.

The third extension of prior law made in Davis follows from the first two extensions. In determining whether the state tax discriminated against federal employees, the Court decided that a "significant difference" standard should be used rather than one of the standards typically applied in equal protection cases. As plaintiffs point out, a "significant difference" standard had been used in matters involving intergovernmental tax immunity. See Phillips, 361 U.S. at 387. However, in taxation cases in which equal protection is at issue, the Court had used as a standard the reasonableness of the classification. See Lehnhausen v. Lake Shore Auto Parts Co. (1973), 410 U.S. 356, 359-60, 93 S.Ct. 1001, 1003-04, 35 L.Ed.2d 351, 355. Until the Court determined in Davis that retirement benefits are protected under 4 U.S.C. § 111 and that the protections under that statute are coextensive with those provided under the doctrine of intergovernmental tax immunity, the standard of analysis was not clear.

9

The majority opinion in <u>Davis</u> clearly describes the Michigan view which rejected the contention that the doctrine of intergovernmental tax immunity rendered the Michigan tax unconstitutional as follows:

> The Michigan Court of Appeals next rejected appellant's contention that the doctrine of intergovernmental tax immunity rendered the state's tax treatment of federal retirement benefits unconstitutional. Conceding that "a tax may be held invalid . . . if it operates to discriminate against the federal government and those with whom it deals," . . . .the court examined the State's justifications for the discrimination under a rational-basis test. <u>Ibid</u>. The Court determined that the State's interest in "attracting and retaining . . . qualified employees" was a "legitimate state objective which is rationally achieved by a retirement plan offering economic inducements," and it upheld the statute.

<u>Davis</u>, 489 U.S. at 807. Using an equal protection analysis, the Michigan court concluded that the legitimate Michigan objective was a rational reason for the discrimination. That of course is directly contradictory to the conclusion reached in <u>Davis</u>, where the Supreme Court concluded that an equal protection analysis was not applicable and used a different standard. The critical significance of the standard of analysis is plain from the following passage from the Court's opinion:

> The State points to two allegedly significant differences between federal and state retirees. First, the State suggests that its interest in hiring and retaining qualified civil servants through the inducement of a tax exemption for retirement benefits is sufficient to justify the preferential treatment of its retired employees. This argument is wholly beside the point, however, for it does nothing to demonstrate that there are "significant differences between the two classes" themselves; rather, <u>it merely demonstrates that the State has a rational reason for discriminating between two similar groups of retirees. The State's interest in adopting the discriminatory tax, no matter how</u>

10

> substantial, is simply irrelevant to an inquiry into the nature of the two classes receiving inconsistent treatment. (Emphasis supplied.)

Davis, 489 U.S. at 816. Thus, while it appears that the State of Michigan's tax statutes would have been constitutional under an equal protection analysis, the tax statutes could not pass the "significant difference" test which the Court concluded must be applied.

In his dissent in Davis, Justice Stevens distinguished Phillips, upon which the majority relied as precedent for use of the "significant difference" standard. In Phillips, the tax was imposed only on lessees of federal property. Justice Stevens stated that:

> The States can tax federal employees or private parties who do business with the United States so long as the tax does not discriminate against the United States . . . The Court today strikes down a state tax that applies equally to the vast majority of Michigan residents, including federal employees, because it treats retired state employees differently from retired federal employees. The Court's holding is not supported by the rationale for the intergovernmental immunity doctrine and is not compelled by our previous decisions. I cannot join the unjustified, court-imposed restriction on a State's power to administer its own affairs.

> . . . When the tax burden is shared equally by federal agents and the vast majority of a State's citizens, however, the nondiscrimination principle is not applicable and constitutional protection is not necessary.

> . . . The Michigan tax here applies to approximately 4½ million individual taxpayers in the State, including the 24,000 retired federal employees. It exempts only the 130,000 retired state employees. Once one understands the underlying reason for the McCulloch holding, it is plain that this tax does not unconstitutionally discriminate against federal employees.

11

Davis, 489 U.S. at 818-21. In Justice Stevens' view the Court's holding is not supported by the rationale for the intergovernmental tax immunity doctrine and is not compelled by the Supreme Court's previous decisions. Under the established equal protection analysis, the Michigan tax scheme appeared constitutional, but it failed the "significant difference" test which the Court applied. Applying the first factor under Chevron to this aspect, it appears that Davis did establish a new principle of law.

Plaintiffs further argue that the issue of whether the Davis decision was foreshadowed is controlled by this Court's opinion in Jenson v. State Dept. of Labor and Industry (1984), 213 Mont. 84, 689 P.2d 1231, aff'd after remand, 221 Mont. 42, 718 P.2d 1335. In Jenson, the issue was whether this Court's opinion in Crabtree v. Montana State Library (1983), 204 Mont. 398, 665 P.2d 231, was foreshadowed. This Court held that Crabtree did not create any new law because it simply was stating the plain language of the Veteran's Preference Act. Jenson, 689 P.2d at 1233. Plaintiffs argue that in Davis, the Court simply was stating the plain language of 4 U.S.C. § 111.

However, in Davis, as the State has pointed out, there was an additional step. 4 U.S.C. § 111 prohibits discriminatory taxation of "pay or compensation" received from the federal government. The Court held that federal retirement benefits were included in "pay or compensation" so that 4 U.S.C. § 111 applied. Davis, 489 U.S. at 808. In Crabtree, the Court was not faced with a comparable preliminary issue of whether the statute was applicable to the

case at hand.

We conclude that this Court's opinion in Jenson does not control as to whether Davis was foreshadowed. Further, because the Davis opinion required at least three extensions of previous law as discussed above, we hold that the result was not clearly foreshadowed.

The second element of the Chevron test is whether retroactive application will further or retard operation of the rule in question. The District Court stated that it could not "see how a retroactive application of the Davis decision would in any way promote" the concept of intergovernmental tax immunity. Plaintiffs argue that "the state's total disregard for 4 U.S.C. § 111 would be condoned if Davis is not applied retroactively."

Because we have concluded that the decision in Davis was not foreshadowed, the plaintiffs' assertion that the tax imposed was illegal is an overstatement. The taxation scheme was not "illegal" until the Davis decision was issued, and the tax has not been imposed since that time. We conclude that refunds as a result of retroactive application of Davis would not promote the concept of intergovernmental tax immunity.

In considering the third factor under Chevron the District Court concluded that equity directed that refunds not be made due to the financial burden on the citizens of the State of Montana. Plaintiffs argue that equity favors making refunds because it is Montana's public policy to provide refunds of illegally collected taxes. But as we have discussed above, taxes collected before the

opinion in <u>Davis</u> were not illegally collected taxes.

4 U.S.C. § 111 was enacted in 1939. Between that time and the date of the <u>Davis</u> decision, twenty-two other states enacted and used tax plans much like Montana's, giving tax advantages to state retirees over other retirees. We conclude that, in view of the acceptance and usage of similar tax plans for approximately 50 years, it would be inequitable to provide refunds to federal retirees when those refunds would of necessity be made at the expense of all Montana taxpayers.

After considering the three factors set out in <u>Chevron</u> we conclude that the District Court did not err in concluding that <u>Davis</u> should not be applied retroactively. We therefore hold that the court did not err in ruling that the plaintiffs are not entitled to tax refunds for the years 1983 through 1988.

_____
Justice

We Concur:

_____
Chief Justice


_____


_____
Justices

_____
Retired Justice L.C. Gulbrandson
sitting for Justice John C. Harrison

_____
District Judge C.B. McNeil
sitting for Justice Wm. E. Hunt.


14

Justice Karla M. Gray, concurring in part and dissenting in part.

I concur with that part of the majority's opinion which holds that James B. Beam Distilling Co. v. Georgia (1991), 501 U.S. ___, 111 S.Ct. 2439, 115 L.Ed.2d 481, is not applicable to the issue of the retroactivity of Davis v. Michigan Department of Treasury (1989), 489 U.S. 803, 109 S.Ct. 1500, 103 L.Ed.2d 891. However, I respectfully dissent from that part of the majority's opinion which holds that Davis should not be applied retroactively.

I agree with the majority that the determination of whether the United States Supreme Court's decision in Davis is to be applied retroactively or only prospectively is governed by the three-pronged test enunciated in Chevron Oil Co. v. Huson (1971), 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 and utilized by this Court in LaRoque v. State (1978), 178 Mont. 315, 583 P.2d 1059. However, I disagree with the conclusions reached by the majority under each prong of the test as applied to the Supreme Court's decision in Davis. Furthermore, I believe that the weakness of the majority's opinion is clearly demonstrated by its heavy reliance on the overturned decision of the Michigan Court of Appeals and the lone dissent of Justice Stevens in Davis. Such reliance by the majority largely ignores the Davis Court majority's rationale in reaching its decision.

For a decision to be applied only prospectively, the first prong of the Chevron test requires that the decision "establish a

15

new principle of law, either by overruling clear past precedent on which litigants may have relied . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed." Chevron, 404 U.S. at 106. Because Davis did not overrule clear past precedent, this Court's analysis is properly limited to the consideration of whether the decision in Davis was clearly foreshadowed.

The majority states that the Davis decision was not clearly foreshadowed on the bases that in order to reach its decision in Davis, the Supreme Court had to (1) extend 4 U.S.C. § 111 to federal retirees receiving pension benefits; (2) extend the doctrine of intergovernmental tax immunity to employees of the governmental entity as well as the entity itself; and (3) decide that the proper standard for determining the validity of a state statute where intergovernmental tax immunity is involved is a "significant difference" standard rather than a rational basis standard. The majority also states that the fact that twenty-three states, including Montana, had tax schemes similar to that of Michigan which the Supreme Court invalidated in Davis, lends support to its conclusion that the holding in Davis was not clearly foreshadowed.

It is my view that a plain reading of the Davis decision itself, together with previous United States Supreme Court decisions, leads to the irrefutable conclusion that the Davis decision was clearly foreshadowed. Contrary to the majority's

16

84, 689 P.2d 1231. As the majority opinion notes, this Court in Jensen held that Crabtree v. Montana State Library (1983), 204 Mont. 398, 665 P.2d 231, did not create any new law because it simply was stating the plain language of the Veteran's Preference Act. In Davis, the Supreme Court did not create any new law because, as the Supreme Court itself stated, the plain language of § 111 dictated its holding that the statute applies to both current and past employees and to the pension benefits. Davis, 489 U.S. at 808.

The majority would have the reader believe that the Supreme Court's decision in Davis constituted an unforeshadowed, abrupt and fundamental change in the doctrine of intergovernmental tax immunity through its holding that employees of the governmental entity, as well as the governmental entity itself, come within the protection of the doctrine. The majority states that "[t]he Davis language addressing the relationship between intergovernmental tax immunity and 4 U.S.C. § 111 clearly breaks new ground." Slip op. at p. 8-9. This is simply not the case as evidenced by the Supreme Court's own observations in Davis.

> On its face, § 111 purports to be nothing more than a partial congressional consent to nondiscriminatory state taxation of federal employees. It can be argued, however, that by negative implication § 111 also constitutes an affirmative statutory grant of immunity from discriminatory state taxation in addition to, and coextensive with, the pre-existing protection afforded by the constitutional doctrine. Regardless of whether § 111 provides an independent basis for finding immunity or merely preserves the traditional constitutional prohibition against discriminatory taxes, however, the inquiry is the same. In either case, the scope of the

18

conclusion, the Supreme Court in Davis did not "extend" 4 U.S.C. § 111 to federal retirees receiving pension benefits. The Supreme Court made it very clear that § 111 applies to both current and past employees and to pension benefits based upon the plain language of the statute:

> As a threshold matter, the State argues that § 111 applies only to current employees of the Federal Government, not to retirees such as appellant. In our view, however, the plain language of the statute dictates the opposite conclusion. Section 111 by its terms applies to "the taxation of pay or compensation for personal services as an officer or employee of the United States."
>
> . . .
>
> We have no difficulty concluding that civil service retirement benefits are deferred compensation for past years of service rendered to the Government. [Emphasis in original.]

Davis, 489 U.S. at 808.

> Any other interpretation of the nondiscrimination clause would be implausible at best. It is difficult to imagine that Congress consented to discriminatory taxation of the pensions of retired federal civil servants while refusing to permit such taxation of current employees, and nothing in the statutory language or even in the legislative history suggests this result.

Davis, 489 U.S. at 810. Assuming that the majority of eight Justices of the United States Supreme Court intended the plain meaning of its words, there is no room for doubt that the Supreme Court's holding that federal retirees fall within the protection of § 111 was clearly predictable or foreshadowed.

Furthermore, I believe that Davis is directly on point with Jensen v. State Department of Labor and Industry (1984), 213 Mont.

17

immunity granted or retained by the nondiscrimination clause is to be determined by reference to the constitutional doctrine. Thus, the dispositive question in this case is whether the tax imposed on appellant is barred by the doctrine of intergovernmental tax immunity. [Emphasis added.]

Davis, 489 U.S. at 813-14.

It is true that intergovernmental tax immunity is based on the need to protect each sovereign's governmental operations from undue interference by the other. Graves, 306 U.S., at 481; McCulloch v. Maryland, 4 Wheat., at 435-436. But it does not follow that private entities or individuals who are subjected to discriminatory taxation on account of their dealings with a sovereign cannot themselves receive the protection of the constitutional doctrine. Indeed all precedent is to the contrary. In Phillips Chemical Co., supra, for example, we considered a private corporation's claim that a state tax discriminated against private lessees of federal land. We concluded that the tax "discriminate[d] unconstitutionally against the United States and its lessee," and accordingly held that the tax could not be exacted. 361 U.S., at 387. . . . [Emphasis in original.] The State offers no reasons for departing from this settled rule, and we decline to do so. [Emphasis added.]

Davis, 489 U.S. at 814-15. Again, assuming the Davis Court intended the plain meaning of its words, there can be no question that it was clearly predictable or foreshadowed that federal retirees fall within the protection of the doctrine of intergovernmental tax immunity.

I also disagree with the majority's conclusion that Davis was not clearly foreshadowed because the Supreme Court had to decide that the proper standard for determining the validity of the state tax scheme is a "significant difference" standard rather than a rational basis standard. The Supreme Court in Davis made it clear that the proper standard to be applied when intergovernmental tax

19

immunity is involved was <u>settled under existing authority</u>.

> <u>Under our precedents</u>, "[t]he imposition of a heavier tax burden on [those who deal with one sovereign] than is imposed on [those who deal with the other] must be justified by significant differences between the two classes." <u>Phillips Chemical Co. v. Dumas Independent School Dist.</u>, 361 U.S., at 383. In determining whether this standard of justification has been met, it is inappropriate to rely solely on the mode of analysis developed in our equal protection cases. We have <u>previously observed</u> that "our decisions in [the equal protection] field are not necessarily controlling where problems of intergovernmental tax immunity are involved," because "the Government's interests must be weighed in the balance." <u>Id</u>., at 385. Instead, the relevant inquiry is whether the inconsistent tax treatment is directly related to, and justified by, "significant differences between the two classes." <u>Id</u>., at 383-385. [Emphasis added.]

<u>Davis</u>, 489 U.S. at 815-16. The Supreme Court was citing its decision in Phillips Chemical Co. v. Dumas Independent School Dist. (1960), 361 U.S. 376, 80 S.Ct. 474, 4 L.Ed.2d 384, decided nearly thirty years before <u>Davis</u>. Thus, the Supreme Court's application of the "significant difference" standard in <u>Davis</u> was clearly foreshadowed in light of this existing precedent.

The majority places great weight on the State's (and other states') reliance on the previously uncontested nature of 4 U.S.C. § 111 with respect to its application to federal retirees. In my view, the fact that twenty-three states, including Montana, had tax schemes similar to the one invalidated in <u>Davis</u> is conclusive of nothing more than that <u>Davis</u> decided an issue of first impression. It does not follow, as the majority opinion implies, that the <u>Davis</u> decision was not foreshadowed. Where the plain language of the statute involved, together with existing precedent, mandates a

particular holding, as was clearly shown in <u>Davis</u>, the prevalence of the wrong is irrelevant to the determination of whether that holding was clearly foreshadowed.

In applying the second prong of the <u>Chevron</u> test, the majority concludes that retroactive application of <u>Davis</u> would not promote the concept of intergovernmental tax immunity. I disagree. In my view, the doctrine of intergovernmental tax immunity can only be furthered by the retroactive application of <u>Davis</u>. Refusing to apply <u>Davis</u> retroactively means that this Court has condoned the State's total disregard for the plain language of 4 U.S.C. § 111 and is akin to a continuation of past discrimination. Such a result does not further and, indeed, retards the doctrine of intergovernmental tax immunity in that it does not tend to deter future State violations of the doctrine.

With respect to the third prong of the <u>Chevron</u> test, I disagree with the majority's conclusion that the equities in this case favor a nonretroactive application of <u>Davis</u>. In considering the equities of retroactive application of a judicial decision, I am fully aware that great weight must be given to the State's reliance upon a presumptively valid statute, enacted in good faith and by no means plainly unlawful. See Lemon v. Kurtzman (1973), 411 U.S. 192, 93 S.Ct. 1463, 36 L.Ed.2d 151. However, where the statute in question is plainly violative of federal statutory and case law, as was Montana's tax scheme in light of the Supreme Court's rationale in <u>Davis</u>, the State's reliance interests are of

21

little or no import. McKesson Corp. v. Div. of Alcoholic Beverages and Tobacco (1990), 495 U.S. ___, ___, 110 S.Ct. 2238, 2257, 110 L.Ed.2d 17, 44.

It is true, as the majority states, that refunds to the federal retirees would result in a financial burden on the other taxpayers of the State; it also is true, however, that those taxpayers have benefited greatly from the federal retirees' overpayment of taxes over many years. In any event, the State's and taxpayers' exposure to the disruptive impact of the tax scheme's invalidation is limited because of the five-year statute of limitations.

Furthermore, the State would not necessarily have to refund the unconstitutionally collected taxes. The federal retirees have indicated their willingness to accept a tax credit mechanism in lieu of actual refunds as a possible remedy which, in my view, has the potential of softening the impact on the State's financial stability even more.

Finally, it must be recognized that, notwithstanding the financial impact to the State, substantial inequities have been wrought upon the federal retirees over a period of many years. Retirees who paid the discriminatory tax and have since left Montana or died would receive no remedy even under a proper resolution of this case. Others would receive back only a small portion of the discriminatory taxes they paid, no matter what remedy might be fashioned, because of the applicable statute of

22

limitations. How the majority can conclude that the <u>Chevron</u> "equities" prong favors the State, as opposed to the federal retirees who were wrongfully discriminated against by the State, is simply beyond my understanding.

I would reverse the judgment of the District Court and hold that under the <u>Chevron</u> test, the <u>Davis</u> decision is to be applied retroactively. Having so held, I would remand this case to the District Court for a determination of the proper remedy to be provided to the federal retirees.

_____
Justice

Justice Terry N. Trieweiler dissenting.

I dissent from the majority opinion in its entirety.

I concur with that part of Justice Gray's opinion which concludes that the case of *Davis v. Michigan Department of Treasury* (1989), 489 U.S. 803, 109 S.Ct. 1500, 103 L.Ed.2d 891, should be applied retroactively based upon the three-prong test set forth in *Chevron Oil Company v. Huson* (1971), 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296.

Contrary to the majority's argument, the result in *Davis* was clearly foreshadowed by the plain language of 4 U.S.C. § 111 and by the Supreme Court's prior decisions in *Phillips Chemical Company v. Dumas Independent School District* (1960), 361 U.S. 376, 387, 80 S.Ct. 474, 481, 4 L.Ed.2d 384, 391-92, and *Memphis Bank and Trust Company v. Garner* (1983), 459 U.S. 392, 397 n. 7, 103 S.Ct. 692, 696 n. 7, 74 L.Ed.2d 562, 567 n.7.

As pointed out by the Supreme Court in *Davis*:

> When the first part of § 111 is read together with the nondiscrimination clause, the operative words of the statute are as follows: "the United States consents to the taxation of pay or compensation . . . if the taxation does not discriminate . . . because of the source of the pay or compensation."

*Davis*, 489 U.S. at 809, 109 S.Ct. at 1504, 103 L.Ed.2d at 901.

Retirement benefits are clearly deferred compensation. Therefore, I cannot comprehend how 4 U.S.C. § 111 could be construed any way other than the manner in which it was construed

24

in *Davis*. As pointed out in Justice Gray's dissent, we have previously held in *Jensen v. State Department of Labor and Industry* (1984), 213 Mont. 84, 689 P.2d 1231, that the plain language of a statute is sufficient to foreshadow a judicial decision which applies that statute. I cannot think of a clearer example of that being the case than the United States Supreme Court's application of 4 U.S.C. § 111 in *Davis*.

The majority opinion is a nearly verbatim adoption of the Department of Revenue's strained rationale that *Davis* was not foreshadowed because it resulted in three extensions of prior law. However, that same argument was made by the State of Michigan in *Davis* and in each respect was refuted by the eight out of nine Supreme Court Justices who subscribed to the majority opinion in *Davis*. The fact that this Court would then ignore the majority opinion and subscribe to the Department of Revenue's argument on the basis of the lone dissent, is at best a peculiar way to apply controlling United States Supreme Court precedent.

Having pointed out that I agree with Justice Gray's thorough analysis of the *Chevron* test for retroactivity, and concluding that that test requires retroactive application of *Davis*, I do not feel that it is necessary to apply the *Chevron* analysis.

The United States Supreme Court has recently gone even further to make clear that the result arrived at by the majority in this case is incorrect.

In *James B. Beam Distilling Company v. Georgia* (1991), ___ U.S. ___, 111 S.Ct. 2439, 115 L.Ed.2d 481, the United States Supreme Court dealt with a similar issue regarding retroactivity.

In the *Beam* case, the Court was asked to decide whether its decision in *Bacchus Imports, Ltd. v. Dias* (1984), 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200, should apply retroactively to claims based on facts which preceded that decision. The effect of the *Bacchus* decision was to hold that state laws which imposed an excise tax on imported alcoholic beverages at a rate greater than those imposed on alcoholic beverages manufactured within that state violated the Commerce Clause of the United States Constitution. Following the *Bacchus* decision, the petitioner in *Beam* claimed that Georgia's law amounted to the same violation, and on that basis sought a refund of the taxes it had previously paid in the years 1982, 1983, and 1984. The state courts in Georgia, however, refused to apply *Bacchus* for the years in question based upon their analysis of *Chevron Oil Company v. Huson* (1971), 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296. In other words, the Supreme Court in Georgia applied the same rationale in *Beam* to deny a refund that the majority relies on in this case to deny a refund to the plaintiffs.

26

Beam sought a writ of certiorari. The United States Supreme Court granted Beam's petition and reversed the Supreme Court of Georgia on June 20, 1991.[1]

In arriving at its decision, the Supreme Court concluded that unless it specifies that its decisions are prospective only, they are to be applied retroactively. It furthermore stated that where its decisions are applied retroactively to one set of litigants they must be applied retroactively to similarly situated persons who are not barred procedurally from asserting their rights. Particularly relevant to this case was the Court's holding that its decision limits the possible applications of the *Chevron Oil* analysis. The Supreme Court stated in part as follows:

> Questions of remedy aside, *Bacchus* is fairly read to hold as a choice of law that its rule should apply retroactively to the litigants then before the Court. Because the *Bacchus* opinion did not reserve the question whether its holding should be applied to the parties before it . . . it is properly understood to have followed the normal rule of retroactive application in civil cases. . . . Because the court in *Bacchus* remanded the case solely for consideration of the pass-through defense, it thus should be read as having retroactively applied the rule there decided. See also *Williams v. Vermont*, 472 U.S. 14, 28, 105 S.Ct. 2465, 2474, 86 L.Ed.2d 11 (1985); *Exxon Corp. v. Eagerton*, 462 U.S. 176, 196-197, 103 S.Ct. 2296, 2308-2309, 76 L.Ed.2d 497 (1983); cf. *Davis v. Michigan Department of Treasury*, 489 U.S. 803, 817, 109 S.Ct. 1500, 1508, 103 L.Ed.2d 891 (1989).

---

[1]This case was argued to the Montana Supreme Court on May 7, 1991. At the time of oral argument, both parties advised this Court of the pending *Beam* case and agreed that the United States Supreme Court's decision in that case could be dispositive of the issue in this case.

*Beam*, \_\_\_ U.S. at \_\_\_, 111 S.Ct. at 2445-46, 115 L.Ed.2d at 490-91.

It is significant that the Supreme Court actually cited *Davis* for the principle of retroactivity. The Court then went on to add:

> *Bacchus* thus applied its own rule, just as if it had reversed and remanded without further ado, and yet of course the Georgia courts refused to apply that rule with respect to the litigants in this case. Thus, the question is whether it is error to refuse to apply a rule of federal law retroactively after the case announcing the rule has already done so. We hold that it is, principles of equality and *stare decisis* here prevailing over any claim based on a *Chevron Oil* analysis.

> . . . .

> . . . To this extent, our decision here does limit the possible applications of the *Chevron Oil* analysis, however irrelevant *Chevron Oil* may otherwise be to this case. Because the rejection of modified prospectivity precludes retroactive application of a new rule to some litigants when it is not applied to others, the *Chevron Oil* test cannot determine the choice of law by relying on the equities of the particular case. Once retroactive application is chosen for any assertedly new rule, it is chosen for all others who might seek its prospective application.

> . . . [W]hen the Court has applied a rule of law to the litigants in one case it must do so with respect to all others not barred by procedural requirements or res judicata. [Citations omitted.]

*Beam*, \_\_\_ U.S. at \_\_\_, \_\_\_, 111 S.Ct. at 2446, 2447-48, 115 L.Ed.2d at 491, 493.

The majority concludes that *Beam* is not applicable to this case because the Supreme Court did not apply *Davis* retroactively. It was applied retroactively, based on the stipulation of the parties to that case. However, that reasoning ignores Justice

28

Scalia's concurring opinion which was joined in by Justice Marshall and Justice Blackmun to the effect that both "selective prospectivity" and "pure prospectivity" are beyond the power of the Court. The implication, as far as those Justices were concerned, is that *Davis* could not have been applied prospectively even if the parties had not agreed to apply it retroactively. *Beam*, ___ U.S. at ___, 111 S.Ct. at 2450-51, 115 L.Ed.2d at 496-97 (Scalia, J., concurring). The majority's conclusion ignores Justice O'Connor's dissenting opinion wherein she states that the *Beam* decision "seriously curtails the *Chevron Oil* inquiry." *Beam*, ___ U.S. at ___, 111 S.Ct. at 2452, 115 L.Ed.2d at 499 (O'Connor, J., dissenting). Finally, the majority's reasoning ignores the fact that eight days after *Beam* was decided, the United States Supreme Court granted petitions for certiorari to retired federal employees in South Carolina and Virginia who sought retroactive application of the *Davis* decision under circumstances identical to the circumstances in this case. In those cases, the Supreme Courts of South Carolina and Virginia rendered decisions similar to the holding of the majority in this case. *See Bass v. State* (S.C. 1990), 395 S.E.2d 171; *Harper v. Virginia Dept. of Taxation* (1991), 241 Va. 232, 401 S.E.2d 868. Both of those decisions were vacated by the United States Supreme Court, and both were remanded to the state courts for "further consideration in light of *James B. Beam Distilling Company v. Georgia*." *Bass*

*v. South Carolina* (1991), \_\_\_ U.S.\_\_\_, 111 S.Ct. 2881, 115 L.Ed.2d 1047 (mem.); *Harper v. Virginia Dept. of Taxation* (1991), \_\_\_ U.S. \_\_\_, 111 S.Ct. 2883, 115 L.Ed.2d 1049 (mem.).

It does not seem to me that the intent of the Supreme Court to apply *Davis* retroactively could be any clearer. The majority's opinion merely postpones the inevitable and unnecessarily prolongs the delusion of state government that it can continue to spend money which was illegally collected and which it will ultimately have to repay.

As far as I am concerned, the issue involved in this case is a simple one. The State took the petitioners' money illegally. That fact is obvious from the plain language of 4 U.S.C. § 111. If a private citizen took someone's money illegally, he or she would be forced to give it back. The State ought to do the same.

The majority talks about equity. What is equitable about allowing the State, with all its power, to illegally seize someone's property, and then after being told what it did was illegal, allowing the State to keep it?

The majority's strained rationale regarding the foreseeability of *Davis* is transparent. When the State of Montana establishes a policy of arbitrarily treating one group of taxpayers differently than another group that is similarly situated, it is certainly foreseeable that what the State is doing is illegal.

The majority's conclusion about how to best effectuate the purpose of the *Davis* decision is similarly illogical. The purpose of the *Davis* decision was to assure that federal employees are treated the same as state employees. How can that purpose possibly be furthered by allowing the State to keep the money that was illegally taken from federal employees and spend it for the benefit of citizens who were not similarly taxed?

The majority's decision is clearly a result-oriented decision arrived at for the purpose of protecting the State's coffers. However, the State's coffers are not the responsibility of this Court. The rights of this State's citizens are.

For the reasons set forth above, the State of Montana can take little comfort in the temporary reprieve granted by this decision.

_____
Justice

31